BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General, Tax Litigation Branch

MATTHEW UHALDE
Trial Attorney, Tax Litigation Branch
U.S. Department of Justice
P.O. Box 683
Washington, DC 20044
202-353-0013
matthew.p.uhalde@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| ELIZABETH CARTER, | ) | |
| | ) | Case No. 1:26-cv-00045 |
| Plaintiff, | ) | |
| | ) | **(1) Reply to Elizabeth Carter's** |
| v. | ) | **Opposition to Motion to Dismiss** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **(2) Response to Carter's Cross-Motion** |
| | ) | **for Leave to File a Second Amended** |
| Defendant. | ) | **Complaint** |
| | ) | |

Plaintiff Elizabeth Carter wants the United States to refund her federal income taxes for 2013–2018. But before Carter could sue for the refund in district court, she had to first send the IRS administrative refund claims for the same years. And that entailed filing amended tax returns for 2013–2018 by the statutory deadlines.

Carter did not do so. The statutory deadline to file her amended return for 2018 was May 22, 2022. Yet as Carter admits, she did not mail the amended return until February 2024—almost two years late. Carter's deadline to file amended returns for 2013–2017 has likewise passed. And she has not mailed those amended returns to date.

What's more, and as the United States explained in its motion to dismiss, timely filing an administrative refund claim is a jurisdictional prerequisite to sue for the refund in court. Thus,

1

because Carter did not file amended tax returns for any year by the statutory deadline, this Court lacks subject matter jurisdiction to entertain her suit.

Carter, in opposition to dismissal, moved for leave to file a second amended complaint. Her motion argues that the second amended compliant alleges facts to cure the jurisdictional defects, but she's wrong. Even accepting the repleaded facts as true, Carter still has not shown that she filed administrative refund claims for 2013–2018 by the statutory deadline. The Court should consequently deny leave to amend as futile and grant the United States' motion to dismiss this suit for lack of jurisdiction.

## I. Carter's New Factual Allegations

Although Carter's new filings cannot establish jurisdiction, they at least flesh out the factual narrative underpinning her suit. In short, Carter alleges the following:

On January 1, 2018, Carter began renting out her house on Airbnb. (Dkt. 17 at 2–3.) Years later, in 2021, she commissioned a study on the property's tax implications. (*Id*. at 3.) The study concluded that Carter could deduct the property's depreciation from her taxable income during each year that she rented out the property on Airbnb. (*Id*.) The study, however, incorrectly stated that Carter began renting out the house on January 1, 2021, rather than the correct date of January 1, 2018. (*Id*.)

As a result, Carter claimed the depreciation deduction on her tax return for 2021, which she filed on October 15, 2022. (Dkt. 17 at 3.) But she did not initially amend her 2018 tax return to claim the depreciation deduction for that year as well. (*Id*. at 2.) Moreover, Carter's ability to claim the depreciation deduction for 2018 "was not apparent on the face of the [original 2018] return." (*Id*.)

Carter eventually discovered this omission after hiring a forensic accountant in December 2023 to review her tax filings. (*Id*. at 5.) Until then, "no reasonably diligent taxpayer without forensic accounting expertise could have discovered" that Carter's 2018 tax return had failed to claim a depreciation deduction that she was entitled to. (*Id*. at 10.)

Two months later, in early 2024, Carter filed an amended 2018 return finally claiming the depreciation deduction for that year. (*Id*. at 6.) The amended return thus asked the IRS to refund Carter's income tax payment for 2018. (*Id*.) By then, however, the statutory deadline for Carter to file an administrative refund claim for 2018—May 22, 2022—had expired. (*See* Dkt. 13 at 2.) The IRS thus denied the administrative refund claim. And as the United States explained in its motion to dismiss, this Court consequently lacks jurisdiction consider the refund claim, because the timely filing of an administrative refund claim is a jurisdictional prerequisite to seek the refund in court. (*Id*.)

Carter, in response, admits that she did not file the amended 2018 return until 2024. But she counters that her tax return for 2021 should be considered an informal refund claim for 2018 because it too claimed a depreciation deduction for the property. Carter thus asserts that her filing of the amended 2018 return should relate back to the date she filed the 2021 return—that is, October 15, 2022.

Meanwhile, in March 2020, Congress passed the CARES Act, which "retroactively restored a five-year carryback period for net operating losses arising" in 2018. (Dkt. 17 at 4.) From this, Carter further asks the Court to award her a tax refund for 2013–2017 by carrying back a loss in 2018 resulting from the depreciation deduction. (*Id*.) Carter concedes, however, that she has never filed amended tax returns for 2013–2017 to claim the loss carryback. (*Id*.)

**Argument**

**1. Carter's tax return for 2021 was not a timely informal refund claim for 2018.**

Because Carter's 2021 tax return claimed a depreciation deduction for that year, she argues it put "the IRS on constructive notice" that Carter would claim a similar deduction for 2018. So under the informal-claim doctrine, Carter contends, her amended 2018 tax return relates back to the date she filed the 2021 return, making the 2018 refund claim timely. Carter is wrong, for several reasons.

Foremost, Carter did not file her 2021 return until October 15, 2022—five months after the May 22 deadline to claim a tax refund for 2018. Thus, even if Carter's amended 2018 return

relates back to October 15, 2022, it still came after the statutory deadline. *See Libitzky v. United States*, 110 F.4th 1166, 1174 (9th Cir. 2024) ("[E]ven assuming that the Libitzkys made a valid informal claim by September 2015 . . . their informal claim was untimely.").

And regardless, Carter's tax return for 2021 cannot be considered an informal refund claim for 2018 under any circumstance. Indeed, the informal-claim doctrine is quite narrow. It applies only where a taxpayer files, by the statutory deadline, a purported refund claim "deficient merely in one or two of the technical requirements imposed by the Treasury regulation[s]." *Comm'r of Internal Revenue v. Ewing*, 439 F.3d 1009, 1015 (9th Cir. 2006), superseded by statute on other grounds as recognized in *Christensen v. Comm'r of Internal Revenue*, 523 F.3d 957, 959 (9th Cir. 2008). In that situation, the taxpayer can cure the technical deficiencies by submitting a perfected refund claim after the statutory deadline, in which case the perfected claim relates back to the technically deficient "informal" claim. *Libitzky*, 110 F.4th at 1174.

Of course, technical deficiencies must be just that—technical. By contrast, a tax return for one year can never constitute an informal refund claim "for a different tax year, even if the underlying legal and factual bases for the claims . . . are the same." *UKP Holdings, Inc. v. United States*, No. 15CV6431RJDRLM, 2018 WL 1701918, at *4 (E.D.N.Y. Apr. 6, 2018) (quoting *Stelco Holding Co. v. United States*, 42 Fed.Cl. 101, 114 (1998)). That is because the year on the return is more than a "technical" detail. *See BCS Fin. Corp. v. United States*, 118 F.3d 522, 525 (7th Cir. 1997) ("The Commissioner [of Internal Revenue] is not required to act as a detective and to search for clues as to whether the plaintiff might desire tax refunds for the years 1974, 1975, and 1976, solely because the plaintiff had filed claims for tax refunds for the years 1971, 1972, and 1973.")

Carter's own tax filings illustrate this. She first argues that her failure to claim a depreciation deduction for 2018 was "not apparent on the face of" her 2018 return and "not discoverable without [the] professional forensic accounting" she hired in December 2023. (Dkt. 17 at 1–2.) Yet Carter claims in the next breath that the 2021 return she filed in October 2022— over a year before retaining that forensic accountant—somehow put the IRS on "constructive

4

notice" that she was entitled to a depreciation deduction for 2018. This cannot be right. If Carter had not realized when she filed the 2021 return that she could claim the depreciation deduction for 2018, then she cannot expect the IRS to have figured it out either.

And again, this all largely beside the point, because Carter still filed her 2021 return after the deadline to claim a refund for 2018. So even if the 2021 return *could* be considered an informal claim, it, too, was too late.

**2. Carter cannot carry back the alleged loss from 2018 to 2013–2017, because she did not file amended tax returns for the earlier years.**

Although the CARES Act created new ways for taxpayers to carry back losses from 2018 to the five preceding years, it was not self-executing. In other words, even if the Act did entitle a taxpayer to retroactively carry back a loss from 2018, the taxpayer still had to file amended returns for the earlier years to actually carry back that loss. If, in contrast, the taxpayer did nothing, then they waived their right to claim the loss carryback.

Moreover, 26 U.S.C. § 6511(d)(2) imposed a statutory deadline to claim a loss carryback under the CARES Act—in Carter's case, October 15, 2022. (*See* Dkt. 13 at 4.) Carter, in turn, admits she did not file amended tax returns for 2013–2017 to carry back a loss from 2018. Indeed, she still has not done so. Therefore, the Court likewise lacks jurisdiction to award a tax refund for 2013–2017 based on a loss carryback under the CARES Act.

In opposition, Carter tersely asserts that the United States "fail[ed] to engage with § 6511(d)(2)." (Dkt. 17 at 18.) But that's incorrect. The statute is plain, and the United States explained why October 15, 2022 was the deadline to file the amended returns for 2013–2017. (Dkt. 13 at 3.)

Carter's only other retort is to say that the "statute of limitations does not transform mathematically [incorrect] income into correct taxable income." (Dkt. 17 at 7.) In the abstract, that may be so. But in practice, deadlines still matter. Our tax system depends on timely filings. And as the Ninth Circuit has explained, a person who misses the statutory deadline to claim a tax

refund has consequently surrendered their right to it. *See Libitzky*, 110 F.4th at 1168. Otherwise, the Treasury would indefinitely be on hook to pay out every refund ever owed.

Nor does the case Carter relies on, *Springfield St. Ry. Co. v. United States*, say otherwise. 312 F.2d 754 (Ct. Cl. 1963). There, a company timely filed an administrative refund claim for 1954. *Id*. at 755. It was undisputed that the amount of this refund for 1954 would increase if the company could show that its income in 1953 was lower than what it had reported on its tax return for that year. *Id*. But the statutory deadline to claim a tax refund for 1953 had since passed. *Id*. Thus, the issue presented was whether the company could reduce its reported income in 1953, without seeking a refund for that year, solely to increase its refund for 1954. *Id*. The Claims Court held that it could, because the deadline to claim a refund for 1954 had not expired. *Id*. at 757–58. Carter's suit is different, because she missed the deadline to claim a tax refund for every year she wants refunded.

**3. The Court should deny leave to amend the complaint as futile.**

For the reasons explained above, Carter's second amended complaint does not plead facts to cure the jurisdictional defects. The fact remains that she did not file administrative refund claims by the deadlines Congress required for any of the years for which she seeks refunds. Thus, even if Carter filed the proposed second amended complaint, the Court would still have to dismiss this suit for lack of jurisdiction. The Court should therefore deny leave to file the second amended complaint as futile. *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017).

**Conclusion**

The Court should dismiss this suit for lack of jurisdiction and deny leave to amend as futile.

Respectfully submitted June 10, 2026.

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General, Tax Litigation Branch

*/s/ Matt Uhalde*
MATTHEW UHALDE
Trial Attorney
United States Department of Justice

**Certificate of Service**

I certify that on June 10, 2026, I filed this document via CM/ECF. In addition, I am mailing the foregoing to the following:

Elizabeth Carter
3808 Mountain View Dr
Boise, Idaho 83704

/s/ Matt Uhalde
MATTHEW UHALDE
Trial Attorney
United States Department of Justice